[L. A. No. 2466.   Department Two.—December 29, 1910.]

## DELFINA DE LA GUERRA et al., Respondents, v. MICHAEL STRIEDEL, Appellant, and K. OKUHARA, Defendant.

RIGHT OF WAY—PERMISSIVE USE—FENCING—EVIDENCE.—In an action to quiet title to a strip of land, in which the defendant set up a claim of a right of way, it is held, upon a review of the evidence, that the finding against the existence of a right of way is sustained by the evidence, which showed that the land had been fenced, and that such use as had been made of it by the defendants and the public was merely permissive.

ID.—EFFECT OF FENCING.—A showing that land claimed as a right of way had been inclosed by a fence, strongly indicates that the use of it by the public was merely permissive, and is strong evidence in support of a mere license to the public to pass over it.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. J. W. Taggart, Trial Judge. Samuel E. Crow, Judge denying new trial.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellant.

B. F. Thomas, for Respondents.

MELVIN, J.—Plaintiffs sued to restrain defendants from breaking down a gate which had been built across a strip of land 10 feet in width, and to quiet their title against defendants to the said strip of land, which was claimed by the defendants as a right of way extending from the property of defendant Streidl (named in the pleadings as Striedel) to Haley Street in the city of Santa Barbara. Defendant John Doe, whose true name was found by the court to be K. Okuhara, having been regularly served and having failed to appear, judgment by default was taken against him. Defendant Streidl by his answer denied plaintiffs' right to close the strip of land in question and counterclaimed a right of way in himself in common with others and the public over the aforesaid property. Treating the counterclaim as a cross-complaint, plaintiffs entered a denial of its allegations and the case was tried on the issues thus raised. Judgment was entered in favor of plaintiffs, and this appeal is from the judgment and from an order denying defendant Streidl's motion for a new trial.

We mention the default judgment against Okuhara because the respondents raise the point that he is an interested party within the meaning of section 940 of the Code of Civil Procedure, and that since he has not been served with the notice of appeal nor the bill of exceptions, this court has no jurisdiction to consider these appeals. While there is, perhaps, some force in this contention (see *Niles* v. *Gonzales,* 152 Cal. 90, [92 Pac. 74] ; s. c. 155 Cal. 359, [100 Pac. 1080]), we have examined the case and are prepared to sustain the judgment and order on their merits. The court, after finding that plaintiffs were the owners of a certain parcel of land, including the strip over which defendant claimed a right of way, found that neither Streidl nor the public had any easement of way across the whole or any part of said land; that "for many years, viz., since 1880, the said parcel of land has been inclosed and separated from the said Haley Street by a good and substantial inclosure with a gateway to enter said parcel of land from said side of Haley Street, which gate was made and maintained by the plaintiffs, their tenants and their predecessors in interest, and that said gate was across that portion of said parcel of land, described as an alley in said defendant's answer;" and that "for thirty years the said Michael Streidl, without the

knowledge of the plaintiffs, occasionally walked along the said parcel of said land described in said defendant's answer as an alley, but the said defendant at no time asserted to the plaintiffs or their predecessors in interest that he claimed any right of way over said alley, but the said defendant's said occasional use of the same was permissive by the plaintiffs and their predecessors in interest." It was also found that the alley was intended by the plaintiffs and their predecessors to be used by themselves and their tenants and that it had been so used for thirty years. It appears that in 1875 Mrs. Josefa de la Guerra owned substantially all of the west quarter of a block in the city of Santa Barbara bounded on the southwest by State Street and on the northwest by Haley Street. Her holding extended 200 feet on Haley Street and 232 feet on State Street. In that year she conveyed to Colonel Hollister the west corner, sixty feet on State Street by one hundred feet on Haley Street. Later she sold to Mr. Stearns a piece of land adjoining Colonel Hollister's with a frontage of 75 feet on State Street and a depth from that street of 125 feet and a strip 25 feet in width running to Haley Street. It will be seen at once that this parcel surrounded the Hollister property on two sides. Later and in the year 1875 Mrs. de la Guerra sold to Streidl the property adjoining that of Stearns. This parcel had a frontage of 25 feet on State Street and a depth of 125 feet. Buildings were erected on the three lots above described and when Mr. Stearns built his back fence, he put it 115 feet from State Street, leaving a strip 10 feet wide at the rear of his lot outside the fence. When Streidl built his fence he followed the example of his neighbor, Mr. Stearns, and left a similar space at the rear of his property. He also put a large gate and two doors in his back fence for convenience, he said, in going and coming between his property and Haley Street. It is this strip of land over which defendant Streidl claims an easement against the plaintiffs who are the successors in interest of Stearns, the latter's title having been acquired by Mrs. de la Guerra by foreclosure about six years after the sale, and having descended with that of the rest of the property here considered to the plaintiffs. Appellant contends that the user by Streidl for thirty years of this alley-way was presumptively adverse and that the court ignored this presumption by a finding to the contrary, unsupported

by competent evidence. The only evidence offered in that
behalf, according to appellant's contention, was that the ten-
ants of Mr. Stearns and Mrs. de la Guerra used the alley as
much as Mr. Streidl did. An examination of the testimony
(which was conflicting) discloses the fact, however, that there
was evidence offered on behalf of plaintiffs tending to show
that a gate was maintained at the Haley Street end of the alley
as found by the court. Carlos de la Guerra testified: "We—
I say 'we' because I had charge of the property at one time—
we have always tried to maintain a gate there since 1874, and
when I came to manage the property in 1886 or 1887 up until
1892 or 1893 we always had a gate there, especially so when
they paved the street, State Street, and paved Haley Street,
including up beyond the gate there, I had that paved with
asphaltum and also paved the passage-way with asphaltum
through that gate—that was in 1888 or 1889 when I had the
asphaltum sidewalk laid there and I had that fence put to
the gate, re-established it as I had already done before. I
never knew of any one else or any one other than the tenants
of this property here having a passage-way or using any part
of this de la Guerra property that is represented here as
vacant or northeast of these lines as a right of way." Mr.
Maris, who occupied the property for eight or nine years fol-
lowing 1891 testified, in reference to the Haley Street ter-
minus: "There was a gate there all the time when I had the
property—there was always a gate up there. It was kept
closed most of the time; I had my horses running loose in
there and the gate was generally closed to keep them in; I
always looked out for that. It was board fence from the
gate down to my tract of land of three or four boards. When
I first put up the fence I put up bars there, but I only kept
them up a short time, and I put up a gate with hinges. That
fence about which I speak as existing on the de la Guerra
property along on Haley Street, up to this gate, was built
along in '91." The same witness said: "While I was the
tenant of this property I knew of people making use of this
gate going back into this property. The tenants of all the
property along there used it. I had no objections to their
using it as long as they didn't trespass on the land, I wanted
to use there, my crop of hay there, and kept the gate closed.
As long as they did that I had no objection. I refer to all

the tenants along there, the tenants in the de la Guerra estate there and back of the Odd Fellows (meaning the property formerly sold to Col. Hollister)." Doctor Franceschi, who occupied property on that block for some time, commencing in 1899, testified: "There was a gate there. I think that gate has been there all the time since I went there. I don't know whether it has been there recently or whether it had been there for some time, but it was there a good many years." It will thus be seen that there is some evidence to sustain the finding that the property had been fenced and that the use of the alley-way was merely permissive. Counsel for appellant are of the opinion that Carlos de la Guerra's testimony was so discredited as to be worthless, but we cannot interfere with the peculiar function of the trial court in passing upon the weight of evidence. The showing that the land had been inclosed by a fence would strongly indicate that the use of it by the public was merely permissive and "is strong evidence in support of a mere license to the public to pass over the designated way." (*Quinn* v. *Anderson,* 70 Cal. 456, [11 Pac. 746] ; *Huffman* v. *Hall,* 102 Cal. 30, [36 Pac. 417].) We think that there is sufficient evidence to justify all of the findings of the court and to sustain the judgment.

The judgment and order therefore are affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.